# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

HOLLY A. WILLIAMS,  : Case No. 3:16-cv-206
                :
       Plaintiff, :
                :
                : Magistrate Judge Sharon L. Ovington
vs. : (by full consent of the parties)
                :
NANCY A. BERRYHILL, :
COMMISSIONER OF THE SOCIAL :
SECURITY ADMINISTRATION, :
                :
       Defendant. :

---

## DECISION AND ENTRY

---

## I.    <u>Introduction</u>

Plaintiff Holly A. Williams brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She applied for benefits on October 11, 2012, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Elizabeth A. Motta concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), and the administrative record (Doc. #5).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Motta's non-disability decision.

## II.  Background

Plaintiff asserts that she has been under a "disability" since November 1, 2004. She was thirty-two years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). She has a high school education. *See id.* § 416.964(b)(4).

### A.  Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Motta that she is not able to work because, "My back pain is pretty severe, and it's going down into my legs ... and my knees hurt. And just being around other people -- it really, really bothers me." (Doc. #5, *PageID* #106). Plaintiff has had back pain for about ten years but does not know what is wrong and has never had surgery. *Id.* Plaintiff's primary-care physician, Dr. Jeffries, prescribed Norco for pain but she does not take it as much as she used to. *Id.* He also prescribed a cane six to seven months before the hearing to help her walk. *Id.* at 108.

Plaintiff had her gallbladder removed in 2012 and has had a lot of problems as a result. *Id.* at 120. If she eats anything, she has loose stools. *Id.* She also had bleeding hemorrhoids that were surgically corrected. *Id.*

Plaintiff's dislike of being around people has gotten worse as she has gotten older and her kids left. *Id.* at 108. She isolates herself because she does not "deal well with others." *Id.* at 119. In the past, when Plaintiff was around people she did not know, she

used foul language.  *Id*.  She described her concentration as "not real great" because she cannot "shut [her] mind down sometimes."  *Id.* at 122.

She has received mental health treatment at Darke County Recovery and Wellness Center and, before that, at Samaritan Behavioral Health.  *Id.* at 109.  She is prescribed medication for anxiety and depression.  *Id.* at 110.  However, "they're kind of working on some of the medications, because … I'm not taking a lot of the narcotics at all anymore.  So they're trying to go with different meds."  *Id*.  At the time of the hearing, she was seeing Marc Marchioli, PA-C, and a counselor, Donna Turner, LISW.  *Id.* at 110-11, 1258, 1269.  Plaintiff testified that "counseling helps quite a bit."  *Id.* at 111.  She would like to see her counselor more but, "she's at least seeing me for an hour at a time every two weeks."  *Id*.

Plaintiff usually carries four knives with her because she does not feel safe.  *Id.* at 117, 123.  She is afraid of people and does not "trust anybody that's coming up behind me or sitting behind me or is going to come through a door … on me."  *Id*.  She has to have her back up against a wall.  *Id.* at 119.

Plaintiff lives in a half-double house with her two daughters (ages 13 and almost 21).  *Id.* at 103.  She has a driver's license and drives two to three times per week.  *Id*.  Plaintiff is able to shower and dress herself.  *Id.* at 115.  Plaintiff is only able to prepare small meals because she cannot stand for very long.  *Id.* at 112.  She can throw clothes into the washing machine but struggles with removing them.  *Id.* at 113-14.  She does not like to go to the grocery store "and deal with all the people in there or the parking or the people in the parking lot or – none of that."  *Id.* at 114.  She does not visit other people:

"if they want to see me, they have come to my house." *Id.* She volunteers at her church for a couple hours. *Id.* at 115. She does not use a computer or tablet. *Id.* She uses her cell phone to access the internet and use Facebook. *Id.* at 116.

Plaintiff graduated high school and has tried to go back to school twice. *Id.* at 104. She first tried to be a medical assistant but she "can't deal with being around all the people" and thought she "wasn't smart enough to comprehend the stuff …." *Id.* She also attended cosmetology school but did not complete it because there was "just too many people." *Id.* at 105.

Plaintiff has had problems with alcohol in the past but does not drink anymore. *Id.* at 111. She has not smoked marijuana in "over six months." *Id.*

**B.  Medical Opinions**

**i.  Mark S. Jeffries, DO, FACOFP**

Dr. Jeffries, Plaintiff's primary-care physician, began treating Plaintiff in November 2011. *Id.* at 534-38. In June 2014, Dr. Jeffries completed a Basic Medical form for the Miami County Department of Job and Family Services. *Id.* at 1232-33. Plaintiff's medical conditions include low back pain, agoraphobia, and anxiety. *Id.* at 1232. Dr. Jeffries noted that her agoraphobia "makes working [with] people difficult[,]" and Plaintiff "states [she] 'cannot be around people.'" *Id.* at 1232-33. Further, Plaintiff "needs to be evaluated by a psychiatrist." *Id.* Dr. Jeffries opined Plaintiff's conditions were good/stable with treatment. *Id.* at 1232. He concluded that Plaintiff is employable but "only if treatment is successful." *Id.* at 1233.

On April 1, 2015, in a letter to the Miami County Department of Job and Family Services, Dr. Jeffries opined that Plaintiff was unable to work due to her medical conditions—chronic back pain, anxiety, and agoraphobia. *Id.* at 1231.

### ii. Jerry E. Flexman, Ph.D.

Dr. Flexman evaluated Plaintiff on February 12, 2013. *Id.* at 560-65. Plaintiff reported that she last worked for Subway, four years prior, for two weeks before quitting. *Id.* at 561. She indicated that she "got along okay with coworkers and supervisors." *Id.* Dr. Flexman noted that Plaintiff "is able to take care of all activities of daily living on her own." *Id.* She reported that she drives, prepares food, does the laundry, washes dishes, cleans, and goes to the grocery one to three times a month. *Id.* Her activities include boating/fishing, attending festivals, using a computer, playing video games, watching TV, and visiting and talking to friends. *Id.* at 561-62.

Dr. Flexman observed that Plaintiff's affect was cheerful and her attitude "was anxious but within normal limits." *Id.* at 562. "Signs of anxiety were noted, with fidgetiness and constricted posture." *Id.* She reported that "her temper is irritable and she yells at her kids." *Id.* Dr. Flexman opined, "Agoraphobia was not indicated." *Id.* In addition, Plaintiff reported "past suicidal ideation but no plans. In January 2013 she overdosed due to stress with kid's problems, was treated and released." *Id.* at 563. He noted "[s]omatic preoccupations." *Id.* Plaintiff's immediate attention span, abstract reasoning effort, concentration, recent memory, and remote memory were fair. *Id.* Her intellectual level of functioning "was minimally within the average range." *Id.* at 563, 565.

Dr. Flexman diagnosed generalized anxiety disorder, alcohol partial remission, major depression recurrent, somatoform disorder NOS, cannabis abuse, and cocaine abuse in remission. *Id.* at 564. He opined, based on her cordial relationship with him, her previous work relationships, and the fact that she does not have a history of termination from jobs due to relationship problems, Plaintiff "may not have problems in relation to others in the workplace." *Id.* at 565. Further, her "past mental health history would not indicate problems with work pressure." *Id.* And, her "daily living stresses do not appear to significantly affect work pressures. Her ability to adjust to new tasks would not require significant support. Work pressures would be expected to significantly increase psychological problems." *Id.*

### iii.     Karla Voyten, Ph.D., & Karen Terry, Ph.D.

Dr. Voyten reviewed Plaintiff's records on February 28, 2013. *Id.* at 135-45. She found Plaintiff has one severe impairment—disorders of back–discogenic and degenerative—and two non-severe impairments—anxiety disorder and affective disorder. *Id.* at 139. Dr. Voyten opined that Plaintiff had no restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation. *Id.* at 140.

On April 27, 2013, Dr. Terry reviewed Plaintiff's records. *Id.* at 147-61. Dr. Terry confirmed Dr. Voyten's assessment with one exception: Dr. Terry opined Plaintiff had moderate difficulties in maintaining concentration, persistence, and pace. *Id.* at 153-54. As a result of this change, Dr. Terry also completed a mental residual functional

capacity assessment. She found that Plaintiff "still retains the capacity for work that is routine in nature with tasks that remain reasonably static and do not have fast-paced performance or strict production quota requirements. Changes need to be both explained and demonstrated." *Id.* at 158. Further, "She can relate to others in a superficial manner and does not require more than routine supervision. She should not be made to work with the general public. Criticism should not be given in a public venue and would be better received if constructive and alternatives suggested and explained. She should not be made to travel in unfamiliar places, frequently interact with unfamiliar others, or use public transportation as a part of her job duties." *Id.*

## III.   <u>Standard of Review</u>

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir.

2007).  Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …."  *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting, in part, *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    <u>The ALJ's Decision</u>

As noted previously, it fell to ALJ Motta to evaluate the evidence connected to Plaintiff's application for benefits.  She did so by considering each of the five sequential

steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached

the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since October 11, 2012.

Step 2: She has the severe impairments of mild degenerative disc disease of the lumbar spine, anxiety disorder, and history of polysubstance abuse in reported remission.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work … including lifting and carrying up to 50 pounds occasionally and 25 pounds frequently. Postural activities (e.g., climbing ramps or stairs, balancing, stooping, kneeling, crawling, crouching) can be done frequently. The claimant cannot climb ladders, ropes or scaffolds. She should avoid exposure to hazards (e.g., dangerous machinery and unprotected heights). The claimant should have regular access to restroom facilities (i.e., no need to seek out a replacement before using restroom facilities and no unusual distances from such facilities – e.g., ordinary office-type work environment facilities). She is limited to performing simple, repetitive tasks of a low-stress nature (i.e., no strict production quotas or fast pace and only routine work with few changes in work setting). The claimant should have no contact with the public as part of job duties. She should have no more than occasional contact with co-workers and supervisors. The claimant should not be expected to perform tasks involving teamwork."

Step 4: She has no past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #5, *PageID* #s 71-90). These main findings led the ALJ to ultimately conclude that

Plaintiff was not under a benefits-qualifying disability. *Id.* at 90.

## V.   Discussion

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions and failed to consider or address her mental health treatment records.  The Commissioner maintains that substantial evidence supports the ALJ's evaluation of the medical opinion evidence and she properly considered all of the record evidence.

### A.   Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule."  *Rogers,* 486 F.3d at 242 (citations omitted).  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting, in part, 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors."  *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Motta discusses the weight she assigned Dr. Jeffries' opinions at several different points in her decision. She first addresses his opinions on Plaintiff's mental impairments. The ALJ did not, however, determine whether his opinions were entitled to controlling weight under the treating physician rule before she addressed the factors. *See Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)) ("these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.").

Nevertheless, ALJ Motta does address the treating physician rule. She concluded that Dr. Jeffries' opinion that Plaintiff is "unable to work due to her physical and mental impairments cannot be given controlling or even deferential weight (and is, in fact, entitled to no weight whatsoever). The conclusions of Dr. Jeffries are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record." (Doc. #5, *PageID* #79).

Under the first condition—whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques—ALJ Motta found: "The extent

11

of impairment described by Dr. Jeffries could only be based on uncritical acceptance of [Plaintiff's] subjective complaints.  Treatment records do not document a mental (or physical) impairment of a severity that would be expected to render an individual unable to work in all manner of competitive employment."  *Id.*; *see id.* at 78 (citation omitted) ("Dr. Jeffries attributed [Plaintiff's] purported inability to work (at least in part) to [Plaintiff's] her own assertion that she cannot be around people – a finding that is not supported by convincing evidence (see, for example, the findings of recognized mental health professional Dr. Flexman).  Dr. Jeffries, himself, described the claimant's condition as 'good/stable with treatment.'").

It is not reasonable for ALJ Motta to assume that Dr. Jeffries relied solely on Plaintiff's subjective complaints because he did not indicate in any way that he relied only on Plaintiff's subjective reports and because physicians are trained to both consider and investigate subjective reports as opposed to blindly accepting them on face value. *See Felisky v. Bowen,* 35 F.3d 1027, 1040 (6th Cir. 1994) ("[A] physician's job is not to question his or her patient's statements, but is rather to match those statements with a diagnosis. … Surely, if they had any doubts about [the plaintiff's] credibility, some mention of it would appear in the medical record.").

ALJ Motta also overlooked or ignored the significant number of treatment notes from both Dr. Jeffries and Plaintiff's mental health providers that support Dr. Jeffries' opinions.  For example, Dr. Jeffries noted on several occasions that Plaintiff was experiencing high irritability, hostility, depression, restlessness/agitation, and anxiety. *See* Doc. #5, *PageID* #s 482, 486, 520, 912.  In October 2013, Plaintiff reported to her

counselor, Heather Stevens, LISW, that she carries knives at all times, one on her person and one in her purse.  *Id.* at 763.  Ms. Stevens observed that Plaintiff's eye contact was intense, she was agitated and hyperactive, and her speech was pressured.  *Id.*  Ms. Stevens noted in November 2013 that Plaintiff "presented as very anxious throughout the session as evidenced by rapidly shaking her leg."  *Id.* at 754.  When Ms. Stevens recommended that Plaintiff go to the convention center for Thanksgiving (because she did not have anywhere else to go), Plaintiff told her she was worried there would be too many people that would make her anxious.  *Id.* at 751.  Additionally, in August 2015, Plaintiff's counselor, Donna Turner, LSW, noted that Plaintiff's "symptoms are 'not improved much[,]' as she cannot sleep, racing thoughts, continually hypervigilant, … jumps from subject to subject without warning, and when she notices one new thing, she cannot remember what she was doing."  *Id.* at 1145.  Further, she observed that Plaintiff's leg was bouncing, she fidgeted, and could not sit still.  *Id.*  Ms. Turner reported in September 2014 that Plaintiff's "voice becomes very loud at times, as she becomes angry or indignant about how she is treated."  *Id.* at 1133.

There is no indication in the ALJ's decision that she considered these or other similar notes.  This constitutes error: "[A] substantiality of evidence evaluation does not permit a selective reading of the record.  'Substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"  *Brooks v. Comm'r of*

*Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)) (internal citations and quotation marks omitted).

Turning to the second condition of the treating physician rule—whether the opinion is not inconsistent with the other substantial evidence in the case record—ALJ Motta, despite initially stating the correct standard, concludes that Dr. Jeffries' opinion is not *consistent* with substantial evidence. A treating physician's opinion, however, need not be consistent with other substantial evidence—it need only be "not inconsistent" with other substantial evidence of record. The difference is significant. The Social Security Administration defines "not inconsistent:" "This is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Soc. Sec. R. 96-2p, 1996 WL 374188, at *3. By needing Dr. Jeffries' opinions be consistent with the record, the ALJ required more of his opinions than the Regulations require. This constitutes error. *See Bowen*, 478 F.3d at 746 ("[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.") (citing *Wilson,* 378 F.3d at 546-47).

However, even if Dr. Jeffries' opinion is not entitled to controlling weight under the treating physician rule, ALJ Motta's review is not complete. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." Soc. Sec. R. 96-2p, 1996 WL

14

374188, at *4. As previously mentioned, ALJ Motta improperly addressed the factors before addressing the treating physician rule.

ALJ Motta first points out that Dr. Jeffries is a family physician—not a mental health professional—and he did not "treat [Plaintiff] for a mental impairment (other than by prescribing psychotropic medication)." (Doc. #5, *PageID* #78). Specialization is a factor for an ALJ to consider when weighing a physician's opinion. *See* 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). But, there are two problems with ALJ Motta's conclusion.

Although Dr. Jeffries is not a psychiatrist or psychologist, he treated Plaintiff for anxiety and depression. He also had the benefit of observing Plaintiff during her many office visits over many years. There is no indication in the record that Dr. Jeffries was unqualified to treat Plaintiff's mental health problems by prescribing medication and adjusting it over time. Substantial evidence, therefore, does not support the ALJ's use of the specialization factor to find Dr. Jeffries unqualified to an offer an opinion about Plaintiff's mental functioning. *See Kester v. Astrue*, 2009 WL 275438, at *7 (S.D. Ohio 2009) (While the family doctor "did not specialize in mental health treatment, his training and licensing as a family physician still made him qualified to treat and prescribe such medications for Plaintiff.").

Further, ALJ Motta's conclusion that Dr. Jeffries did not "treat" Plaintiff for her mental impairments is perplexing—if not absurd. The definition of "treat" (at least as it

15

applies in the present case) is "to care for or deal with medically and surgically." *Definition of Treat,* MERRIAM-WEBSTER https://www.merriam-webster.com/dictionary/treat (last visited Sept. 29, 2017). Or, put another way, "Give medical care or attention to; try to heal or cure." *Definition of Treat,* ENG. OXFORD LIVING DICTIONARIES https://en.oxforddictionaries.com/definition/treat (last visited Sept. 29, 2017).

The record reveals a long history of Dr. Jeffries' treatment of Plaintiff's mental impairments. For instance, Plaintiff first reported anxiety and depression to Dr. Jeffries on March 5, 2012. (Doc. #5, *PageID* #520). He noted that she was "very emotional (tearful)." *Id.* Dr. Jeffries initially diagnosed dysthymic disorder. *Id.* at 521. In December 2012, Dr. Jeffries noted, "mood was worse; increased anxiety; panic symptoms." *Id.* at 486. Additionally, she was experiencing high irritability; anxiety; restlessness/agitation; sleep disturbances; anxiety with excessive sweating; trembling or shaking; and headaches. *Id.* Plaintiff reported interference with her household activities, sleep, and school. *Id.* Dr. Jeffries diagnosed generalized anxiety disorder and prescribed lorazepam. *Id.* at 487. He continued to treat her mental impairments on and off, and as recently as January 9, 2015, he noted that she had increased and anxiety and panic symptoms; diagnosed mixed anxiety and depression disorder; and prescribed clonazepam. *Id.* at 1214.

Next, ALJ Motta finds, "His assertion that [Plaintiff] has 'disabling' anxiety and agoraphobia is implausible given [Plaintiff's] level of functioning as documented elsewhere in the record." *Id.* at 78. But, the ALJ does not provide any examples or

citation to the record and does not indicate where "elsewhere" is. And, Plaintiff's ability

to, for instance, clean her house, use a computer, and take care of her personal grooming

and hygiene needs is not inconsistent with anxiety and agoraphobia. *See Gayheart,* 710

F.3d at 377 ("the ALJ does not contend, and the record does not suggest, that [the

plaintiff] could do any of these activities on *a sustained basis,* which is how functional

limitations of mental impairments are to be assessed.").

ALJ Motta also questioned Dr. Jeffries' choice of terms: "What Dr. Jeffries meant

by 'unable to work' is not clear nor is such a generic statement consistent with the

specific and precise definition of 'disability' for Social Security purposes." (Doc. #5.

*PageID* #78). And, she found, "In the same report, Dr. Jeffries did not rule out the

possibility that [Plaintiff] could, in fact, work and he characterized [her] as 'employable'

(if treatment is successful)." *Id.* (citation omitted).

As an initial matter, the statements were not made in the same report. Dr. Jeffries

indicated in June 2014 that Plaintiff was employable "only if treatment is successful." *Id.*

at 1233. In April 2015, he opined, "At this time due to her medical conditions she is

unable to work." *Id.* at 1231. These two statements, moreover, are not inconsistent.

Although ALJ Motta tries to minimize his conditional statement, it plainly states "*only*

if treatment is successful." *Id.* at 1233 (emphasis added).

Last, ALJ Motta observed, "The ultimate conclusion as to whether an individual

satisfies the statutory definition of 'disability' is an issue that is reserved to the

Commissioner of Social Security." *Id.* at 78 (citation omitted). But, the fact that Dr.

Jeffries expressed an opinion on the ultimate issue of Plaintiff's disability status is not a

valid reason to discount or ignore it. "The pertinent regulation says that 'a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.' That's not the same thing as saying that such a statement is improper and therefore to be ignored...." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (internal citation omitted); *see Kalmbach v. Comm'r of Soc. Sec.*, No. 09-2076, 409 F. App'x 852, 861 (6th Cir. 2011) ("the fact that the ultimate determination of disability, *per se,* is reserved to the Commissioner, 20 C.F.R. § 404.1527(e) [§ 416.927(d)(1)], did not supply the ALJ with a legitimate basis to disregard the physicians' [opinions].").

ALJ Motta does not address the factors that tend to support Dr. Jeffries' conclusions. For example, although the ALJ recognizes that Dr. Jeffries is Plaintiff's treating physician, she does not acknowledge the length and frequency of examinations. *See* 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). This was a significant omission because Dr. Jeffries began treating Plaintiff in 2011 and saw her twelve times in 2012, eleven times in 2013, and seventeen times in 2014. *See* Doc. #5, *PageID* #s 480-538, 878-960, 1019-53, 1206-22.

Likewise, the ALJ does not address consistency. *See* 20 C.F.R. § 416.927 (c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Plaintiff's treatment records from Day-Mont Behavioral Healthcare and Darke County Recovery Services are consistent

with Dr. Jeffries' treatment notes and opinion. For example, Plaintiff's anxiety, agitation, and depression are consistently documented throughout the record. *See* Doc. #5, *PageID* #s 482, 486, 520, 805, 829, 834, 912, 1145, 1147, 1151, 1153, 1259, 1275.

"Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' … an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[1]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

---

[1] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2.      No finding is made as to whether Plaintiff Holly A. Williams was under a "disability" within the meaning of the Social Security Act;

3.      This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4.      The case is terminated on the Court's docket.


Date:  September 29, 2017                 *s/Sharon L. Ovington*
                                             Sharon L. Ovington
                                             United States Magistrate Judge